IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTONIO ORLANDER JERIDO, | ) | |
| #169480, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.  2:10cv310-SRW |
| | ) | |
| KEN HARMON; ANN DAVIS; | ) | |
| CAPTAIN WHITE; LT. BLAND; | ) | |
| OFFICER GREEN; | ) | |
| SGT. SMITHERMAN; SGT. SMITH; | ) | |
| OFFICER SCARBROUGH; | ) | |
| OFFICER PENALTIN,[1] | ) | |
| and OFFICER FOX, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Antonio Orlander Jerido ["Jerido"], a former inmate

of the Chilton County Jail, in Clanton, Alabama, who is now housed at the Donaldson

Correctional Facility in Bessemer, Alabama, claims that officials at the Chilton County Jail

violated his constitutional rights by opening his incoming documents from the court and the

Alabama Internal Affairs Department outside his presence, by refusing to allow Jerido to seal

outgoing documents to the court and his lawyer before placing them in the prison mail

---

[1]In their response to the complaint, the defendant advises the correct spelling of his name is Pennington.  However, for purposes of this Memorandum, the court will refer to the defendant as identified by the plaintiff.

system, and by treating him differently from another inmate whose legal mail was opened in the inmate's presence.[2]  *Complaint - Doc. No. 1* at 3-6; *Pl.'s Mtn. to Add Defs. - Doc. No. 4* at 1-2; *Pl.'s Special Report - Doc. No. 7* at 2.  The defendants are identified as Warden Ken Harmon, Assistant Warden Ann Davis, Captain George White, Lt. Jennifer Bland, Officer Jo Green, Officer Ryan Fox, Officer Kathy Penaltin, Officer William Scarbrough, Officer Mike Smith, and Sergeant Allen Smitherman.  *Defs.' Resp. - Doc. No. 39.*  Jerido seeks damages and injunctive relief.  *Complaint - Doc. No. 1* at 4; *Pl.'s Special Report- Doc. No. 7* at 2, 5.  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

The defendants filed a special report, supplemental special report, second supplemental special report, and supporting evidentiary materials addressing Jerido's claims for relief.  *Doc. No. 39, Doc. No. 63, and Doc. No. 66.*  In these documents, the defendants deny Jerido's allegations that they violated his constitutional rights.  Additionally, the defendants assert that the complaint is due to be dismissed because Jerido failed to exhaust an administrative remedy available to him at the Chilton County Jail with respect to the

---

[2]This Memorandum is limited to those issues presented by the plaintiff in the complaint and the allowed amendments, *see Doc. No. 1, Doc. No. 4, and Doc. No. 7,* as any other claims are not properly before the court.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)  ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15 (a).  A plaintiff may not amend . . . [his] complaint through argument in a brief [or response] opposing summary judgment.").

claims presented in this cause of action.  The defendants base their exhaustion defense on the plaintiff's failure to lodge a grievance with the jail before filing the claim presently pending before this court.

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  *Order of August 11, 2010 - Doc. No. 42*; *Order of Sept. 24, 2010 - Doc No. 67; Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment[,]" the defense is appropriate for summary judgment when the evidence demonstrates administrative remedies "are absolutely time barred or otherwise clearly infeasible.").  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment with respect to the exhaustion defense is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

including affidavits, relevant documents or other materials] the court may . . . grant summary

judgment if the motion and supporting materials -- including the facts considered undisputed

-- show that the movant is entitled to it."). A genuine dispute of material fact exists when the

nonmoving party produces evidence that would allow a reasonable fact-finder to return a

verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment. In respect to the latter, our inferences must accord
> deference to the views of prison authorities. [] Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to

survive the defendants' properly supported motions for summary judgment, Jerido is required

to produce "sufficient [favorable] evidence" which would be admissible at trial supporting

his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is

merely colorable . . . or is not significantly probative . . . summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing

party's position will not suffice; there must be enough of a showing that the [trier of fact]

could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)

(citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are

likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice

to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the*

*Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a

*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Jerido fails to demonstrate a genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION

On January 27, 2010, Jerido was transferred from the Elmore County Jail to the Chilton County Jail to await criminal proceedings. He was transferred back to Elmore County Jail in July 2010. *Harmon Aff.* at 1-2, *Defs.' Resp. - Doc. No. 39-2* at 1-2. The evidentiary materials submitted by the parties establish that Jerido did not file a grievance with jail personnel challenging the handling of his incoming or outgoing mail before filing his original complaint in this suit in April 2010. *Id.* at 2. The defendants therefore maintain that this case is subject to dismissal because Jerido failed to exhaust the administrative remedy provided at the Chilton County Jail prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

### A. Exhaustion

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to

8

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81. Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Ngo*, 548 U.S. at 93 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90-91, 93. The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison

Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to her.  *Id.* at 83-84; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).  "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."  *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) (inmate's "attempt to amend or supplement his original complaint did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint. Therefore, he cannot cure the exhaustion defect").

The record in this case establishes that the Chilton County Jail provides a grievance procedure for inmate complaints.  *Defs.' Resp. - Doc. No. 39-12* at 17-18.  The relevant portion of the grievance procedure reads as follows:

> It is the policy of the Chilton County Corrections Facility that grievances may be initiated by any inmate, at any time, for mistreatment or abuse by jail personnel or other inmates without fear of retribution. . . .
>
> The inmate will file his grievance in writing on the Inmate Grievance Form. The grievance will be given to a corrections officer who will attempt to resolve it.  If he/she cannot resolve the grievance, it will be forwarded to the shift supervisor.  If the shift supervisor cannot resolve the issue, the grievance will be forwarded to the Lieutenant.
>
> Every effort will be made to resolve a grievance, verbally or in writing, within five (5) working days from the date the original grievance is received.  A

10

written record of the grievance resolution will be forwarded to the inmate within fifteen (15) days from the original grievance date, and a copy will be placed in the inmate's file.

Grievances of an emergency nature will be dealt with on a more expedient time frame according to the nature of the situation.

The inmate filing the grievance must allow the appropriate time for the grievance to be answered.  Multiple grievances for the same complaint will not be accepted.  No block-wide grievances will be accepted.

*Id.*  Defendants presented one grievance that Jerido submitted to prison officials on June 2, 2010.  In it he complained,

My mail from the courts have been opened without me present since the month of Feb. until now.  Your officers here continue to state that my mail from the court is "not legal."  I've talked to several of them and I still can't get anywhere cause they say that this is coming from you "Warden" and "Assit Warden Davis."  And it seems that you want [sic] answer my other request.  Can you please stop opening my mail without me being present from the court and other government officials.

*Defs.' Resp. - Doc. No.  39-11* at 1.  Defendant Warden Harmon disposed of the grievance stating, "Talked w/ inmate Jerido about legal mail, and advised him that court document[]s are not legal mail."  *Id.*  Defendants submitted other "Inmate Request Forms" that Jerido submitted to jail personnel, but none of them are grievances and none of them concern his incoming or outgoing mail.  *Id.* at 2-19.

The court entered orders allowing Jerido the opportunity to respond to the arguments made by the defendants in their special reports.  *Doc. No. 42*, *Doc. No. 50, Doc. No. 51, Doc. No. 54, Doc. No. 62, Doc. No. 67, and Doc. No. 70*.  In his responses to the orders and in his response to the defendants' supplemental report, Jerido presents argument and evidentiary

materials, including the June 2, 2010, grievance. *Pl.'s Resp. - Doc. No. 25, Doc. No. 46-1 at 2; Doc. No. 53, Doc. No. 61, and Doc. No. 68.* However, Jerido has submitted no evidence that at any time prior to filing this civil action in April 2010, he submitted a grievance with jail personnel challenging the reading of mail from the court or governmental officials outside his presence. Rather, all of the evidence before the court demonstrates that Jerido failed to file a grievance regarding this matter before he filed suit in this case. He also has submitted no evidence demonstrating that he ever filed a grievance regarding the refusal of prison officials to allow him to seal outgoing mail to the court or his attorney before placing it in the prison mail system, or regarding an alleged decision to discriminate against him. Although Jerido argues that his comment, "you want [sic] answer my other request" demonstrates that he "was complaining about prison conditions," the comment is too vague and speculative to put Warden Harmon, who did not respond to it, on notice about all the additional matters Jerido raises in this lawsuit. *Pl.'s Resp. - Doc. No. 46 at 5.* The court therefore concludes that the claims presented in this cause of action are subject to dismissal. *Ngo*, 548 U.S. at 87-94.

It is undisputed that Jerido failed to exhaust an administrative remedy available to him which is a precondition to proceeding in this court on his claim. Specifically, Jerido did not file a grievance with respect to the claims presented in this cause of action as allowed by the grievance procedure in effect at the Chilton County Jail before filing this case. Jerido is no longer at the Chilton County Jail; thus, the administrative remedy provided by the defendants

12

for the instant claim is no longer available to Jerido.  Under these circumstances, dismissal with prejudice is appropriate.  *Bryant*, 530 F.3d at 1375 n.11; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## B.  Mootness and Qualified Immunity

Even if the court were to reach the merits of plaintiff's complaint contained in his only grievance -- that is, that officials read incoming mail from the court outside his presence[4] -- summary judgment would be due to be granted to defendants.  First, plaintiff Jerido is no longer at Chilton County Jail, so his request for equitable relief is moot.  *See Adler  v. Duval County School Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).  "Equitable relief is a prospective remedy, intended to prevent future injuries." *Id.*  For that reason, "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff

---

[4]Plaintiff also states in his grievance, "you want [sic] answer my other request," but his reference is too vague to encompass all of his other claims in this suit, and the documents in the summary judgment record do not clarify the reference. *Defs.' Response - Doc. No. 46-1* at 2.

13

no longer needs protection from future injury." *Id.*; *see also Spears v. Thigpen,* 846 F.2d 1327, 1328 (11th Cir. 1989) (per curiam) ("[A]n inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred.") (quotation marks and citation omitted).  There is no indication that Jerido, who is now at the Donaldson Correctional Facility, will be returned to the Chilton County Jail.  "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul,* 755 F.2d 777, 780 (11th Cir. 1985).  Absent in this case is any showing of a "continuing, present injury or real and immediate threat of repeated injury" to Jerido.  *See id.* (finding that a transfer of the plaintiff back to the jail if he was again incarcerated at a minimum security facility and charged with a disciplinary infraction was too speculative to satisfy the required injury element).  Mootness is jurisdictional, and dismissal of the equitable claims is required when an action is moot, as a decision in a moot action would be an impermissible advisory opinion. *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001) *(*per curiam*)*.  Consequently, plaintiff's equitable claims, if they were exhausted, are due to be dismissed.

Second, the defendants are entitled to qualified immunity from damages.  Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536

14

U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (same). Qualified immunity is not merely a defense against liability but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citation omitted).  To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that the defendants were acting within the course and scope of their discretionary authority when the incidents complained of occurred.  Plaintiff Jerido must, therefore, allege facts that, when read in a light most favorable to him, show that defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

In order to satisfy his burden, a Plaintiff must show two things: (1) that Defendants committed a constitutional violation and (2) that the constitutional right Defendants violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). Courts now have discretion to determine the order in which the two prongs of Plaintiff's burden of proof are analyzed. *Pearson*, 555 U.S. at 236 (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case hand."). "Thus, the qualified immunity standard is broad enough to cover some mistaken judgment, and it shields from liability all but the plainly incompetent or those who knowingly violated

the law." *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) (citations and quotation marks omitted).

At the time defendants acted, it was not clearly established that Jerido had a constitutional right to have his incoming mail from the court opened in his presence. In fact, several months after defendants acted, the undersigned issued a Recommendation that public court documents not be considered "legal mail" that must be opened in an inmate's presence because they are nonprivileged public records. *See Richards v. Sutton*, 2009 WL 2914518, at *6 (M.D. Ala. Sept. 9, 2009) ("It is doubtful that the mail in question can be considered 'legal mail,' but was, rather, merely a copy of a document filed in this civil action and which is a matter of public record. Such mail is not in any way privileged, and a jailer's opening of it is not a constitutional violation."). Interference with legal mail violates an inmate's right of access to the courts. *See Al-Amin v. Smith,* 511 F.3d 1317, 1330–31 (11th Cir. 2008); *Lemon v. Dugger,* 931 F.2d 1465, 1468 (11th Cir. 1991). An access-to-courts claim, however, requires "actual injury regarding prospective or existing litigation," such as "missing filing deadlines or being prevented from presenting claims" while "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Wilson v. Blankenship,* 163 F.3d 1284, 1290 & n.10 (11th Cir. 1998) (citations omitted); *see Al-Amin,* 511 F.3d at 1332–33. Jerido has alleged no such injury, and he has not alleged he received non-public records from the court, consequently if his access to the courts claim were properly exhausted, summary judgment

16

would be due to be granted to defendants.  *See Hope*, 536 U.S. at 739.

An inmate also "has a First Amendment free speech right to communicate with his attorneys by mail, separate and apart from his constitutional right to access to the courts." *Id.* at 1334; *see also id.* at 1334 n.34 (limiting discussion to attorney-client mail and not "legal mail in general").  Unlike an access-to-the court claim, a free speech claim does not require an actual injury.  *Id.* at 1334.  This First Amendment free speech right is, of course, subject to the limitations attendant to an inmate's status as a prisoner and the legitimate penological interests of jail administrators.  *Id.* at 1333.  Jerido's grievance did not relate to mail to or from his attorneys, and it was not clearly established when defendants acted that Jerido had a free speech right to have his incoming public documents from the court opened in his presence.  Consequently, if Jerido's free speech claim were properly exhausted, summary judgment would be due to be granted to defendants.  *See Hope*, 536 U.S. at 739.

### IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED and ADJUDGED that:

1.  The defendants' motion for summary judgment be GRANTED to the extent the defendants seek dismissal of this case due to the plaintiff's failure to properly exhaust an administrative remedy previously available to him at the Chilton County Jail.

2.  This case be dismissed with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for the plaintiff's failure to exhaust an administrative remedy provided to

him during his confinement in the Chilton County Jail as this remedy is no longer available

to him with respect to the claims presented in the this cause of action.

3.  No costs are taxed herein.

A separate Final Judgment will accompany this memorandum opinion.

DONE, this 3rd day of July, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE